UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-40259-FDS

| | |
|---|---|
| ANDRE MITCHELL and<br>DOROTHY MITCHELL,<br>    Plaintiffs | )<br>)<br>)<br>) |
| vs. | )<br>) |
| OFFICER AARON KENNEDY, OFFICER<br>ROBERT QUIRK, OFFICER DAVID<br>SPADAFORE, SERGEANT MARK AMICO,<br>SERGEANT DENNIS SURRETTE and the<br>TOWN OF LEOMINSTER,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### STANDARD OF REVIEW

A motion for summary judgment must be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving's party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir. 1990); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 37 (1st Cir. 1995), *quoting, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

"There must be 'sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'"  *Rogers,* 902 F.2d at 143, *quoting, Anderson,* 477 U.S. at 249-50, 106 S. Ct. 2505) (citations and footnote in *Anderson* omitted).  All reasonable inferences must be drawn in favor of the nonmoving party, see, e.g., *Barbour,* 63 F.3d at 36, but "those inferences 'must flow rationally from the underlying facts; that is, a suggested inference must ascend to what common sense and human experience indicates is an acceptable level of probability,'"  *Rubinovitz v. Rogato,* 60 F.3d 906, 911 (1st Cir. 1995), *quoting, National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 743 (1st Cir. 1995).

## ARGUMENT

### A.    The Plaintiffs' Claims Pursuant To 42 U.S.C. § 1983 Must Be Dismissed As Against Officers Quirk, Amico, Spadafore And Surrette.

The plaintiffs' Complaint contends that the defendants, Quirk, Spadafore, Amico and Surrette, deprived them of their rights "to be free from unreasonable seizures, to be free from unreasonable searches and to be free from the use of excessive force, all in violation of 42 U.S.C. § 1983 and their Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution".  Complaint at ¶¶ 29-30.

It is well established that 42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).  Plaintiffs have identified their claims as arising under the Fourth and Fourteenth Amendments.

### As to Andre Mitchell:

The only officer against whom Andre Mitchell is pursuing a claim is Officer Aaron Kennedy.  (Exhibit B to Defendants' Statement of Undisputed Facts Pursuant to Fed. R. Civ. P.

56.1 [hereinafter "Exhibit B"] at p. 76, line 17-p. 79, line 8; p. 79, line 16-p. 84, line 12).  At deposition, plaintiff, Andre Mitchell testified as follows:

Q. Who is it that you allege actually placed you under arrest?

A. Officer Kennedy.  He did, but he didn't transport me.

Q. Who is it that you allege sprayed your eyes?

A. Officer Kennedy.

Q. Why is that you have brought a complaint against Officer Robert Quirk?

A. That was the other officer that was with him in the house.

Q. What did he do?

A. What was that?

Q. What did he do to you?

A. He was in the house at the time.

Q. Other than being present in the house, what do you allege Officer Robert Quirk did to violate any of your rights?

A. Besides him being partners with Officer Kennedy, that was it, just them two just being -- I mean, when it happened, I mean, it was an ugly scene.

Q. Upon what facts do you base your claim that Officer David Spadafore violated any of your rights?

A. They all was present at the time.

Q. So, other than that he might have been present and in your mother's house?

A. Right.

Q. You don't have any facts upon which to base --

A. No.

Q. -- any claims against Officer David Spadafore, correct?

A. That's correct.

Q. Upon what facts do you base your claim against Mark Amico, Sergeant Mark Amico?

A.    Excuse me.  Can I have a moment with counsel, please?

Q.    Can you answer the question first and then you can have as much time as you'd like?

A.    Yes.

Q.    Can you answer the question first?  As a general rule, if there's a question on the table --

A.    Okay.

Q.    -- the deponent answers and then you can take a break.

A.    Okay.  Okay.

Q.    Can you answer the question that's before you?

A.    Okay.  Repeat the question, please.

Q.    Would you mind?

A.    He was just present.  They did -- they -- didn't assault me.  Officer Kennedy, he was, I mean, he assaulted me.  He vandalized my mom's home.

Q.    You're talking about Officer Kennedy?

A.    Yes.

Q.    I'm only asking you right now about Sergeant Mike Amico.

A.    Okay.

Q.    Other than your allegation that he was present in the home, you don't have any facts upon which to base any claims against Sergeant Mark Amico, correct?

A.    Correct.

(Exhibit B at p. 76, line 17-p. 79, line 8).

Q.    (By Ms. Pelletier) Can you tell me what facts if any you have within your possession that support your claim against Sergeant Dennis Surrette?

A.    No.

Q.    Do you know who Dennis Surrette is?

A.    Is he a sergeant?

Q.      According to your complaint.

A.      Yes.

Q.      You do not have any facts within your possession presently to support a
claim against Sergeant Dennis Surrette, is that correct?

A.      Correct.

Q.      Was he present at the house?

A.      I'm not sure.

Q.      Did you actually see Officer --

A.      I wasn't --

Q.      I'm sorry.  Go ahead.

A.      Go ahead.

Q.      Did you actually see Officer Robert Quirk present inside your mother's
home on May 17, 2002?

A.      I really didn't see too much.  I was maced.  I couldn't keep my eyes open.

Q.      Did you ever see Officer Robert Quirk inside the home on that day?

A.      Yes.  I know he was there.  Yes.

Q.      Did you see Officer Quirk?

A.      Yes.

Q.      Did you see Officer Spadafore?

A.      No, I don't remember.

Q.      Did you see Sergeant --

A.      I heard voices.  I couldn't really see because of the pepper spray.

Q.      Did anybody identify themselves as being Officer Spadafore in your
mother's home that day?

A.      Maybe to my mother.

Q.      Not to you?

A.      At that time, like I told you, I couldn't really see.  I was pepper sprayed
and I was booked.

464015

Q.  You said you could hear.  My question, sir, is did you hear anybody identify themselves as being Officer David Spadafore?

A.  No, I did not.

Q.  Did you see Sergeant Mark Amico?

A.  I can't recall.

Q.  Did you year anybody identify themselves as being Sergeant Mark Amico?

A.  No.

Q.  Did you see Sergeant Dennis Surrette?

A.  I know that he was present.  I really couldn't see.

Q.  How do you know he was present?

A.  Because they're on the police report, the names.

Q.  Is that the only basis upon which you have brought the claims against Officer David Spadafore, Sergeant Mark Amico and Sergeant Dennis Surrette, because their names are on the police report?

A.  I really couldn't see because of the pepper spray.  They didn't identify -- I mean, a cop, he's not just going to identify himself.  They didn't even tell me why I was being arrested.

Q.  Okay.  I'm going to ask for you to listen to my questions and try to answer the questions.  Is the only reason you've brought a claim against Officer David Spadafore, Sergeant Mark Amico and Sergeant Dennis Surrette is because their name is identified on the police report or do you have any other facts in your possession upon which to base your claims against those particular officers?

A.  My mom.

Q.  What about your mom?

A.  She explained which cops was in her house.

Q.  What did she explain to you?

A.  She explained that they was in there and that they shouldn't have been in there, they had no right to be in there.  So, she's putting a complaint out for them.

464015

Q.    So, she told you that all of those officers that I've just identified were in her house that day?

A.    Yes.

Q.    So, there was five police officers present?

A.    Yes.

Q.    Your mother has a separate Complaint from you, you understand that, your mother has made a separate complaint for whatever she claims happened to her than the Complaint that you've made with regard to what happened to you, do you understand that?

A.    Yes.

**Q.    Are you making claims against each of the officers that I have identified?**

        **MR. TUMPOSKY:  Objection:  You can answer.  You can answer.**

        **THE WITNESS:  No.**

**Q.    (By Ms. Pelletier)  Which officers are you making a claim against?**

**A.    Against Officer Aaron Kennedy.**

**Q.    So, it's your testimony today, sir, that the only officer against whom you are pursuing a claim is Officer Aaron Kennedy, is that correct?**

        **MR. TUMPOSKY:  Can we go off the record for a second?**

        **MS. PELLETIER:  No. I'd like him to answer the question.**

        **MR. TUMPOSKY:  Well, he can answer the question and then we'll go off the record.**

**Q.    (By Ms. Pelletier)  Can you answer that question, sir?**

**A.    Could you repeat the question?**

**Q.    It's your testimony today that the only officer against whom you are pursuing a claim is Officer Aaron Kennedy, is that correct, of the officers that I named?**

**A.    That is correct.**

(Exhibit B at p. 79, line 16-p. 84, line 12).

By his own testimony, the plaintiff, Andre Mitchell, cannot proffer a single fact upon which to base the imposition of liability for a constitutional violation against Officers Robert Quirk and David Spadafore, and Sergeants Mark Amico and Dennis Surrette and, as such, the claims against them must be dismissed.

To the extent that plaintiff, Andre Mitchell, now contends that he has brought suit against Officers Robert Quirk and David Spadafore, and Sergeants Mark Amico and Dennis Surrette based on their warrantless entry of 84 Adams Street, it is clear that he lacks standing to bring such a claim. See *United States v. Romain*, 393 F.3d 63, 68 (1st Cir. 2004); *United States v. Aguirre*, 839 F.2d 854, 856 (1st Cir. 1988). According to his own testimony, as of May 17, 2002, Andre Mitchell resided at 129 Adams Street, Leominster, Massachusetts. (Exhibit B at 7). He, therefore, had no reasonable expectation of privacy with respect to the premises subject to being violated. *Id.*

Even assuming that the plaintiff, Andre Mitchell, has standing to bring such claims and is in fact doing so, the defendants submit that for the reasons discussed below with regard to the plaintiff, Dorothy Mitchell's, claims, the plaintiff, Andre Mitchell's, claims as against these police officers must be dismissed.

### As to Dorothy Mitchell:

Plaintiff, Dorothy Mitchell alleges claims against Officers Aaron Kennedy, Robert Quirk, and David Spadafore, and Sergeants Mark Amico and Dennis Surrette based solely on their warrantless entries into 84 Adams Street on May 17, 2002. (Exhibit C to Defendants' Statement of Undisputed Facts Pursuant to Fed. R. Civ. P. 56.1 [hereinafter "Exhibit C"] at p. 51, line 10-p. 55, line 1; p. 55, line 14-p. 56, line 10; p. 57, line 3-p. 58, line 2; p. 69, lines 4-8). At deposition, Ms. Mitchell was questioned and answered as follows:

    Q.    Were there any officers that you claim that were in your house other than
          Officer Kennedy and Officer Quirk?

A.      There were other ones there.

Q.      Who were they?

A.      I don't know.  They are on the police report.  That's the only way I know those names is because they were on that police report.  I did not know those police officers.

Q.      Who was the first police officer in your home to your knowledge?

A.      Officer Kennedy.

Q.      And how do you know that?

A.      Because he was the only one there when I came downstairs.

Q.      You have brought suit against five police officers, do you understand that?

A.      Yes, I do.

Q.      Can you state all the facts upon which you base your claim that Officer Robert Quirk violated any of your rights?

        MS. HEDGES:  Objection.

Q.      You can answer.

A.      Yes.

Q.      Go ahead.

A.      They were in the house.  There was no warrant.  Why are you there?

Q.      Other than what you've just testified to, which is Officer Robert Quirk was in your house without a warrant, are there any other facts upon which you claim that Officer Quirk violated any of your rights?

        MS. HEDGES:  Objection.

A.      No.

Q.      Can you state all the facts upon which you base your claim that officer David Spadafore violated your rights?

        MS. HEDGES:  Objection.

A.      He was in the house, too.

Q.      When was he in the house?

A.    The police report put him in there.  I don't know why he was in there.  I don't even know if he was there.  When I went to file my complaint, I couldn't do it against the City of Leominster, the police department.  I had to do it against officers individually, so that's who he put on the police report so that's who we are filing against.

Q.    Sitting here today do you have any personal knowledge as to whether Officer David Spadafore was present in your home at any time?

A.    There were officers in the house but I do not, I do not know who they are.

Q.    What do you claim Officer David Spadafore did in your home?

      MS. HEDGES:  Objection.

A.    Just being there, he was just there.

Q.    His existence in your home violated your rights?

      MS. HEDGES:  Objection.

A.    Yes.

Q.    What rights?

A.    There's no warrant, why you there?

Q.    So the mere fact that he was present in your home without a warrant is the basis for your claim against Officer Spadafore?

A.    That's correct.

      MS. HEDGES:  Objection.

Q.    That's it?

A.    Yup.

Q.    But you don't have any idea even of who Officer Spadafore is, correct?

A.    Nope.

Q.    Can you state all the facts upon which you base your allegation that Sergeant Mark Amico violated your rights?

      MS. HEDGES:  Objection.

A.    Excuse me, say that again, please?

Q.    Can you state all the facts upon which you base your allegation that

Sergeant Mark Amico violated your rights?

A.     You know I'd have to say yes.

Q.     Can you state all the facts upon which you base your allegation that Sergeant Mark Amico violated your rights?

A.     Yes.

Q.     State the facts.

A.     Because I was told he was in the house.  I didn't see him but outside he stated he was not in my house.

(Exhibit C at p. 51, line 10-p. 55, line 1).

Q.     So the only facts upon which you base your claim against Sergeant Mark Amico is the fact that Virginia and her sister told you that he was present in the home?

        MS. HEDGES:  Objection.

A.     Yes.

Q.     State all the facts upon which you base your allegation that Sergeant Dennis Surrette violated your civil rights?

        MS. HEDGES:  Objection.

A.     Yes.

Q.     Can you state the facts, please?

A.     He was in the house.

Q.     Did you observe him in the house?

A.     Probably, I just didn't know who he was.

Q.     Sitting here today you can't describe Officer Surrette?

A.     No.

Q.     And you can't tell me that you have any personal knowledge that he was present in your home?

A.     No.

(Exhibit C at p. 55, line 14-p. 56, line 10).

464015

Q.    Other than the presence, we already talked about that, other than the mere presence in your home, are there any other facts upon which you base your allegation that any of these officers violated your rights?

　　　　MS. HEDGES:  Objection.

A.    I was never told why you were there, that's a violation.

Q.    Of what?

A.    Any, my rights.

Q.    Your right to what?

　　　　MS. HEDGES:  Objection, Nancy.

A.    My rights, it's a violation of my rights, it's my home.

Q.    Identify each officer that you asked what they were doing there by name.

A.    Kennedy.

Q.    Did you ask any other officer other than Kennedy?

A.    No.

Q.    Are there any other facts upon which you base your allegation that any of these officers violated your rights?

　　　　MS. HEDGES:  Objection.

A.    No.

Q.    Are there any other facts upon which you base your allegation that any of these officers violated your rights.

　　　　MS. HEDGES:  Objection.

A.    No.

(Exhibit C at p. 57, line 3-p. 58, line 2).

Q.    The one outside was Officer Amico?

A.    That's what I was told.

Q.    I'm a little bit confused.  Do you claim that he was or he wasn't in the house at some point?

A.    I didn't see him in the house.

464015

(Exhibit C, p. 69, lines 4-8.)

It must be noted that the plaintiff, Dorothy Mitchell, has not pled a claim based on these officers' alleged entrance into 84 Adams Street. Rather, as noted above, the claims asserted in the complaint are those based upon the right to be free from unreasonable search, seizure and/or excessive force. See Complaint at ¶¶ 29-30; 31-32. Assuming, without conceding, that the plaintiff, Dorothy Mitchell, has stated a claim based on the warrantless entry of 84 Adams Street, it is clear that this is her only claim as she was not the subject of a seizure, search, or use of force not does she so allege.

Warrantless entry into a home does not constitute a search or a seizure per say. It is further clear that not every warrantless entry constitutes a seizure. *United States v. Berrett*, 513 F.2d 154, 155 (1st Cir. 1975). It is equally clear that warrantless entry and search within the meaning of the Fourth Amendment are not synonymous. See *Kyllo v. United States*, 533 U.S. 27 (2001).

It is undisputed that the plaintiff, Dorothy Mitchell, was free to move about the house, and did move about the house, stopping to talk with those present in the house during the course of Andre Mitchell's arrest. (SOF at ¶ 24). In fact, Dorothy Mitchell was allowed such freedom of movement as to actually be able to touch Andre Mitchell. *Id*. The record does not disclose any factual basis for concluding that the house was seized where occupants other than Andre Mitchell was clearly free to move about. Further, the record does not contain any allegation that the house was searched. Finally, to the extent that the entrance into 84 Adams Street and brief presence within the house of Officers Robert Quirk, and David Spadafore and Sergeants Mark Amico and Dennis Surrette constituted a seizure of the house, as discussed below, qualified immunity protects Officers Robert Quirk, and David Spadafore and Sergeants Mark Amico and Dennis Surrette from the imposition of liability.

464015

1.    __The Plaintiff Cannot Meet Her Burden Of Proving That Officer Spadafore,__
__And Sergeants Amico And Surrette Actually Entered 84 Adams Street,__
__Leominster, Massachusetts On May 17, 2002.__

The plaintiff, Dorothy Mitchell, testified at deposition that her claims against Officer Spadafore and Sergeants Amico and Surrette are based solely on their presence in 84 Adams Street on May 17, 2002. (See Exhibit C pp. at 9-13, *supra*).

While she further testified that there were an unspecified number of officers other than Officer Kennedy present in her home on the night in question, (Exhibit C at 36-37), neither plaintiff's testimony is sufficient to raise an inference in their favor that Officer Spadafore and Sergeants Amico and Surrette were actually present. In fact plaintiff, Dorothy Mitchell, testified "There were officers in the house but I do not, I do not know who they are." (Exhibit C at 53). The only officers identified in the course of discovery and in a form admissible for consideration under Fed. R. Civ. P. 56 as having been present in the house, are Officers Kennedy and Quirk. (SOF at ¶ 22).

The plaintiff, Andre Mitchell, does not remember seeing Officer David Spadafore inside of 84 Adams Street during the night of May 17, 2002. (Exhibit B at 80-81). No one identified themselves as being Officer David Spadafore to plaintiff, Andre Mitchell. (Exhibit B at 80-81). Plaintiff, Dorothy Mitchell, testified both that Officer Spadafore was inside 84 Adams Street on May 17, 2002 because his name appears on the Police Report and that she does not know if Officer Spadafore was present within 84 Adams Street on May 17, 2002.[1] (Exhibit C at 52-53).

The plaintiff, Andre Mitchell, testified that no one inside of 84 Adams Street identified himself as Sergeant Mark Amico on the night of May 17, 2002. (Exhibit B at 81). The plaintiff, Andre Mitchell, also testified that he does not remember if he saw Sergeant Mark Amico inside of 84 Adams Street on the night of May 17, 2002. *Id.* The plaintiff, Dorothy Mitchell, also

---

[1] The police report is hearsay and, therefore, not admissible at trial. See Fed. R. Evid. 801; 802.

testified that the only reason that she has brought suit against Sergeant Amico is that his name appears on the Police Report. (Exhibit C at 69).

The plaintiff, Andre Mitchell, also testified that he has no facts to support a claim against Sergeant Surrette and that he is not sure whether or not Sergeant Surrette had been in of 84 Adams Street on the night of May 17, 2002. (Exhibit B at 79-80). Plaintiff, Dorothy Mitchell, testified that she has no personal knowledge of Sergeant Surrette's presence within 84 Adams Street on May 17, 2002. (Exhibit C at 56).

Based upon all of the foregoing, the defendants submit that plaintiffs' claims against Officer David Spadafore and Sergeants Mark Amico and Dennis Surrette must be dismissed because plaintiffs cannot meet their burden of proof at trial. See *Rogers, supra,* 902 F.2d at 143.

**2.    To The Extent That Some Or All Of Officers Quirk, And Spadafore, and Sergeants Amico And Surrette Entered 84 Adams Street, Judgment Must Enter In Favor Of These Defendants On The Basis Of Qualified Immunity.**

Qualified immunity is intended to shield public officials in the course of performing discretionary acts "from civil damages liability as long as their actions could reasonably have been thought constant with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive. See, *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

Qualified immunity shields government officials from liability for civil damages when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Qualified immunity provides protection to "all but the plainly incompetent or those who

knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The relevant question, then, is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir. 1991). If no constitutional right is violated, a defendant is entitled to qualified immunity as a matter of law. *Saucier v. Katz,* 533, U.S. 194, 201 (2001). The First Circuit applies a three step approach to the qualified immunity analysis: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (internal quotation marks omitted; citation omitted).

Assuming, without conceding that the plaintiffs have met their burden as to the first prong of the qualified immunity analysis, the second and third prongs preclude the imposition of liability.

### a.    The Evidence Does Not Establish That Right Asserted Was Clearly Established At The Time Of Its Alleged Violation.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2002), *citing, Wilson v. Layne*, 536 U.S. 603, 615 (1999). At a general level, the right asserted by the plaintiff was well established at the time that the defendants, Quirk, Spadafore, Amico and Surrette, entered 84 Adams Street. However, assuming the facts that exist in the light most favorable to the plaintiff, those being that these officers followed Officer Kennedy into the home, it would not be clear to a reasonable officer

that this conduct was unlawful when faced with the situation where one officer was alone inside a dwelling which had just been entered by a suspect. (SOF at 18, 20).

> **b.**     **The Evidence Does Not Establish That An Objectively Reasonable Officer Would Have Believed That The Action At Issue Violated A Clearly Established Constitutional Right.**

For the same reasons as set forth above, the officers split second decision to follow Officer Kennedy into 84 Adams Street is not actionable. See *Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994). "Omniscience is not the presumed mindset with which an objectively reasonable officer approaches [potentially] life-endangering situations." *Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1379, n. 11 (1st Cir. 1995). Their decision to follow Officer Kennedy into 84 Adams Street was objectively reasonable even if they were mistaken as to the propriety or necessity of doing so. See *Joyce v. Town of Tewksbury*, 112 F.3d 19, 22 (1st Cir. 1997). *Hegarty v. Somerset County*, 53 F.3d 1367, 1379, n.11 (1st Cir. 1995).

**B.**     **Judgment Must Enter In Favor Of All Defendants As To Count II Of Plaintiffs' Complaint Because A Direct Deprivation Of Rights, Without More, Is Not Actionable Under M.G.L. c. 12, § 11I.**

M.G.L. c. 12, § 11I was enacted to provide a remedy co-extensive with 42 U.S.C. § 1983 with the exception of the state action requirement. See *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 822-823 (1985). Perhaps the most significant difference between claims brought pursuant to M.G.L. c. 12, § 11I and 42 U.S.C. § 1983, is the unique requirement, pursuant to c. 12, § 11I, that the civil rights violation occur by way of "threats, intimidation, or coercion." "Threat" has been held to "involve the intentional exertion of pressure to make another fear or apprehensive of injury or harm." *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474 (1994). "Intimidation" has been defined as the creation of fear to compel conduct, and "coercion" to be the active domination of another's will. *Id.* See also, *Dean v. Dempsey,* 403 Mass. 468 (1988). "[A] direct deprivation of rights, even if unlawful, is not coercive because it

is not an attempt to force someone to do something the person is not lawfully required to do." See *Freeman v. Planning Bd. of West Boylston,* 419 Mass. 548, 565 (1995).

The plaintiffs have alleged direct deprivations of their Fourth and Fourteenth Amendments to the United States Constitution. There is no factual allegation in the Complaint nor is there any indication in the record that Officer Kennedy or any of the other defendants engaged in threats, intimidation, or coercion within the meaning of M.G.L. c. 12, § 11I. "Not every violation of law is a violation of the state Civil Rights Act. A direct violation of a person's right does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." *Longval v. Commissioner of Correction*, 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989), *citing, Pheasant Ridge Assoscs. Limited Partnership v. Burlington*, 399 Mass. 771, 781, 506 N.E.2d 1152 (1987). Due to the absence of any indication in the record that the alleged direct deprivation of plaintiffs' rights involve threats, intimidation or coercion, Count II of plaintiffs' complaint should be dismissed as to all defendants. See *Id.* at 333-334. Therefore, Count II of the plaintiffs' complaint should be dismissed as to all defendants.

Further, for the reasons stated above with regard to plaintiff, Dorothy Mitchell's, claim pursuant to 42 U.S.C. § 1983, Officers Robert Quirk and David Spadafore, and Sergeants Mark Amico and Dennis Surrette are entitled to qualified immunity with regard to Dorothy Mitchell's claims pursuant to M.G.L. c. 12, § 11I. See *Rodriguez v. Furtado*, 410 Mass. 878, 881, 885 (1991).

## C.    The Record Discloses No Basis For The Imposition Of Municipal Liability Under 42 U.S.C. § 1983.

In Count III of the plaintiffs' complaint, the plaintiffs allege that the Town of Leominster is liable under 42 U.S.C. § 1983 for failure to adequately train, supervise, and discipline its police officers and in that it inadequately investigates citizen's complaints.

It is clear that a municipality cannot be liable on a theory of *respondeat superior*, but,

rather, may only be liable upon allegations and proof of impermissible policy or custom. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978). The defendant municipality submits that the complaint and discovery is devoid of any factual support of the same. In the absence of proof that the Town employed an unconstitutional municipal policy or custom, there can be no municipal liability under 42 U.S.C. § 1983. *Id.; Baron v. Hickey,* 242 F. Supp. 2d 66, 75-76 (D. Mass. 2003).

The *Monell* Court held that municipal liability under § 1983 can be imposed <u>only</u> where the municipality itself "causes" the alleged constitutional violation. *Monell, supra,* 436 U.S. at 658, 692; see also, *DiRico v. City of Quincy,* 404 F.3d 464, 469, n.12 (1st Cir. 2005). The plaintiff bears the burden of demonstrating the existence of a policy or custom and a "direct causal link" between that policy or custom and the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *Monell v. Dept. of Social Services,* 436 U.S. 658, 694 (1978); *Santiago v. Fenton,* 891 F.2d 373, 381-382 (1st Cir. 1989).

The Court further clarified its position in *Pembaur v. Cincinnati,* 475 U.S. 469, 483-484 (1986) holding:

> [M]unicipal liability under § 1983 attaches where -- and only where -- a <u>deliberate choice</u> to follow a course of action is made from among various alternatives by city policy makers. See also *Oklahoma City v. Tuttle,* 471 U.S. at 823 (opinion of Rehnquist, J.). Only where a failure to train reflects a "single deliberate" or "conscious" choice by a municipality -- a "policy" as defined by our prior cases" can the city be liable for such a failure under § 1983.

"A municipality can be liable under § 1983 for failing to [train, supervise, and discipline] if that failure causes a constitutional violation or injury and amounts to deliberate indifference to the rights of persons with whom the offices come into contact." *DiRico,* 404 F.3d at 468-469, *quoting, City of Canton v. Harris,* 489 U.S. 378, 388 (1989) (internal quotation marks omitted), [omitted], *citing, Bordanaro v. McLeod,* 871 F.2d 1151, 1159 (1st Cir. 1989).

In their complaint, the plaintiffs allege that the Town of Leominster has a "custom and policy of deliberate indifference to the rights of its citizens by:

> (a) not adequately training and supervising its police officers on the proper use of force, search guidelines and arrest procedures; (b) not adequately investigating citizens' complaints against its police officers, nor taking prompt disciplinary action against officers who violate the rights of citizens; and (c) not adequately supervising officers who are prone to conducting illegal searches and seizures, and to the use of excessive force.

Complaint at ¶ 34.

The plaintiffs have not identified, nor does the record disclose, a policy of inadequately training, supervising, or disciplining its police officers on the part of the Town of Leominster. Similarly, there is no support for the allegation contained in plaintiffs' Complaint that it has a policy not to investigate citizen's complaints. Nor have the plaintiffs identified the existence of a relevant policy maker. See *Wilson v. City of Boston*, 421 F.3d 45, 59-60 (1st Cir. 2005). Most importantly, the plaintiffs cannot show the requisite causal link between the alleged deprivation of rights and any policy or failure on the part of the Town of Leominster.

Contrarily, there is affirmative evidence in the record that the Town of Leominster trains its police officers with regard to arrest procedures, probable cause, the use of force, searches in general, and search warrants. With regard to Officer Kennedy's training, Officer Kennedy testified at deposition that he received 18 weeks of training at the Police Academy, beginning in April 1995. (SOF at ¶ 24); See *DiRico v. City of Quincy*, 404 F.3d 464, 465, 468-469 (1st Cir. 2005) (no failure to train where police officer received ten weeks of training, a portion of which dealt with Quincy's use of force policy). Officer Kennedy further testified that he received training in arrest procedures, probable cause, and the Leominster Police Department's use of force policy while at the Police Academy. (SOF at ¶¶ 25, 26); See *Id*. Officer Kennedy testified he is familiar with the Leominster Police Department's policies and procedures, including the

Department's use of force policy.  (SOF at ¶ 27); See *Id.*  Officer Kennedy further received training in search warrants and searches in general.  (SOF at ¶ 28); See *Id.*

There is also affirmative evidence in the record that the Town of Leominster has a policy of investigating citizen complaints and other internal affairs matters.  Officer Kennedy testified that Captain Bisol of the Leominster Police Department investigates civilian complaints against Leominster police officers.  (SOF at ¶ 32).  Officer Kennedy also testified that, to his knowledge, he has never had a complaint brought against him by a citizen of Leominster.[2]  Cf. *Bordanaro v. McLeod*, 871 F.2d 1151, 1159-1162 (1st Cir. 1989).

The plaintiffs can point to no evidence in the record suggesting that Officer Kennedy is prone to conducting illegal searches and seizures or to the use of excessive force or that the Town of Leominster has failed to supervise him based on any such alleged propensity.

As to the remaining defendants, because the record is devoid of any factual support for a claim of improper use of force, improper search, improper arrest, the conducting of an illegal search and/or seizure and/or the use of excessive force by necessity there is an absence of a causal link between the alleged policy and any alleged constitutional deprivation insofar as it relates to the actions of the officers.  *City of Canton v. Harris, supra.*

Given the absence of evidence to support Count III of plaintiffs' Complaint, this Count must be dismissed.

---

[2] It should be noted that the plaintiffs in the instant action never filed an internal affairs complaint with the Leominster Police Department.  Instead, they chose to file a criminal complaint which was dismissed for lack of probable cause.  (SOF at ¶ 31).

## CONCLUSION

WHEREFORE, for the foregoing reasons, the defendants respectfully submit that partial

summary judgment and summary judgment, as appropriate, should enter in their favor.

THE DEFENDANTS
OFFICER AARON KENNEDY,
OFFICER ROBERT QUIRK,
OFFICER DAVID SPADAFORE,
SERGEANT MARK AMICO,
SERGEANT DENNIS SURRETTE and the
TOWN OF LEOMINSTER


By____/s/ *Nancy Frankel Pelletier*_____
Nancy Frankel Pelletier, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.:  544402
npelletier@robinson-donovan.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on this 15th day of
November, 2006.

_____/s/ *Nancy Frankel Pelletier*_____
Nancy Frankel Pelletier, Esq.